DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

CRAIG L. VANDERWALL and CYNTHIA )
T. VANDERWALL,                  )
                                )
              Plaintiffs,       )
                                )     Civil No. 2012-84
         v.                     )
                                )
MARRIOTT OWNERSHIP RESORTS (ST. )
THOMAS), INC., MARRIOTT         )
OWNERSHIP RESORTS, INC., and    )
MALVON PERCIVAL, JR.,           )
                                )
              Defendants.       )
_____)

**ATTORNEYS:**

**Helen K. Kim, Esq.**
Moore Dodson & Russell, P.C.
St. Thomas, U.S.V.I.
     *For Craig L. Vanderwall and Cynthia T. Vanderwall.*

**Carl A. Beckstedt, III, Esq.**
Beckstedt and Associate
St. Croix, U.S.V.I.
     *For Marriott Ownership Resorts (St. Thomas), Inc. and*
     *Marriott Ownership Resorts, Inc.*


## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court are two motions. The first is a motion by

Marriott Ownership Resorts, Inc. to dismiss the complaint in

this action for lack of personal jurisdiction. The second is a

joint motion by Marriott Ownership Resorts, Inc. and Marriott

Ownership Resorts (St. Thomas), Inc. to dismiss the amended

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 2

complaint for failure to state a claim upon which relief may be granted.

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

On or about March 14, 2008, Craig L. Vanderwall and Cynthia T. Vanderwall ("the Vanderwalls" or "the plaintiffs") entered into a Contract for Purchase with Marriot Ownership Resorts (St. Thomas), Inc. ("MORI-STT"), for a timeshare interest in the Frenchman's Cove Condominium located at No. 5 Frenchman's Bay Quarter, St. Thomas, U.S. Virgin Islands (the "Timeshare Unit") for the purchase price of $133,500.

In March of 2012, the Vanderwalls arrived in St. Thomas for a vacation at their Timeshare Unit. During their stay, the safe located inside the Timeshare Unit malfunctioned several times and could not be opened. Each time, the Vanderwalls called the front desk to get assistance with the safe.

On March 15, 2012, Cynthia Vanderwall called the front desk, for the third time during her stay, to report that the safe inside her Timeshare Unit could not be opened. Mrs. Vanderwall informed her husband about her call. She then went to the bathroom to take a shower. Shortly thereafter, a man wearing a yellow Marriott shirt, later identified as Defendant Malvon Percival, Jr. ("Percival"), appeared at the Timeshare Unit and stated that he was there to fix the safe. Mr. Vanderwall

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 3

directed Percival to the master bedroom, where the safe was located.

While Percival purportedly tried to fix the safe, Mr. Vanderwall briefly left the room for three to four minutes to work on his laptop computer. Percival eventually opened the safe and called Mr. Vanderwall back into the room. At that time, Mr. Vanderwall noticed that the safe door was closed. On prior occasions, the security officer had opened the safe and left the door open. Percival explained that the safe was fixed and left the Timeshare Unit.

After Mrs. Vanderwall came out of the shower, she went to the safe and discovered that her diamond wedding ring[1] was missing from the safe. The Vanderwalls reported the missing ring to MORI-STT management. The Vanderwalls filed a police report that same day.

Thereafter, several MORI-STT employees accused Mrs. Vanderwall of dropping the ring "down the drain" and "flushing it down the toilet." (Am. Compl. ¶ 21.) In addition, the employees refused to provide the name of the security officer that had been inside the Timeshare Unit to open the safe.

---

[1] The Vanderwalls allege that "[t]he ring was an 18-carat band studded with a three-carat princess cut diamond, four round brilliant cut diamonds and sixteen baguettecut diamonds, valued at approximately sixty thousand dollars ($60,000)." (Am. Compl. ¶ 19.)

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 4

On or about March 23, 2012, Mrs. Vanderwall received a phone call from a man who refused to give her his name. The caller told Mrs. Vanderwall that he had purchased a ring from someone in St. Thomas and later found out that the ring had been stolen. Mrs. Vanderwall checked the caller ID on her phone. The caller ID indicated that the unidentified man was calling from a Kentucky phone number. The name displayed on the caller ID was "Malvon Percival." The unidentified man apologized to Mrs. Vanderwall and made arrangements to return the ring to her. Subsequently, the man informed Mrs. Vanderwall that he had mailed the ring to her. He provided her with a tracking number.

On or about March 26, 2012, Mrs. Vanderwall received a ring in the mail. The ring was later identified by Mrs. Vanderwall's jeweler as the ring that had been stolen from the safe inside the Timeshare Unit. The ring was damaged with scratches.

On March 28, 2012, Percival was arrested and subsequently charged with grand larceny and possession of stolen property. Percival told police investigators that he found the ring and sent it to his father, Malvon Percival, Sr., in Kentucky to check to see if it was real. Percival eventually pled guilty to possession of stolen property. He was sentenced to six months incarceration (suspended), eighteen months supervised probation, and one hundred hours of community service.

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 5

The Vanderwalls filed the instant action on October 12, 2012. They filed a seven-count amended complaint on October 15, 2012. Count One alleges negligence/failure to provide adequate security against Marriott Ownership Resorts, Inc. ("MORI") and Marriott Ownership Resorts (St. Thomas), Inc. ("MORI-STT") (collectively, the "Marriott defendants"). Count Two alleges negligent hiring, retention, and supervision against the Marriott defendants. Count Three alleges respondeat superior against the Marriott defendants. Count Four alleges breach of warranty against the Marriott defendants. Count Five alleges negligent misrepresentation against the Marriott defendants. Count Six alleges misrepresentation against the Marriott defendants. Count seven alleges conversion against Percival.

MORI now moves to dismiss for lack of personal jurisdiction. MORI and MORI-STT jointly move to dismiss the amended complaint for failure to state a claim upon which relief can be granted. The Vanderwalls oppose the motions. Percival has not appeared in this matter. On the Vanderwalls' motion, the Clerk of the Court entered default against Percival on June 5, 2013.

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 6

## II.   DISCUSSION

### A. Personal Jurisdiction

#### i.   Facial Challenge

Once challenged, " '[t]he burden of demonstrating the facts that establish personal jurisdiction,' falls on the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A challenge to a court's exercise of personal jurisdiction may be either facial or factual. In a facial challenge, a court must take all allegations in the complaint as true and the plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Land Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

> Moreover, "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *accord O'Connor*, 496 F.3d at 316 (explaining that prior to an evidentiary hearing or trial, "the plaintiff[s][are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor" (alterations in original) (internal quotation marks omitted)). "Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir.1992).

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 7

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330-31 (3d

Cir. 2009).

### ii.   **Statutory and Due Process Considerations**

"Under Federal Rule of Civil Procedure 4(k), a District

Court typically exercises personal jurisdiction according to the

law of the state where it sits." *O'Connor*, 496 F.3d at 316; *see*

*also* Fed. R. Civ. P. 4(k)(1)(A).

If the exercise of personal jurisdiction comports with

local law, a court must next ask whether, under the Due Process

Clause of the United States Constitution, the defendant has

"certain minimum contacts with . . . [the forum state or

territory] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Int'l*

*Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Due Process Clause recognizes two types of personal

jurisdiction: general and specific. *See O'Connor*, 496 F.3d at

317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*,

466 U.S. 408, 414-15 & n.9 (1984)). "A court may exercise

general jurisdiction over a defendant where he or she has

'continuous and systematic' contacts with the forum, whether or

not those contacts are related to the plaintiff's cause of

action." *Metcalfe*, 566 F.3d at 334 (citing *Helicopteros*

*Nacionales de Colombia*, 466 U.S. at 416; *BP Chems. Ltd. v.*

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 8

*Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000)).

"Specific jurisdiction exists if the defendant has

' "purposefully directed" his activities at residents of the

forum and the litigation results from alleged injuries that

"arise out of or relate to" those activities.' " *Metcalfe*, 566

F.3d at 334 (quoting *Burger King Corp.*, 471 U.S. 462, 472 (1985)

(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774

(1984); *Helicopteros Nacionales de Colombia*, 466 U.S. at 414)).

" 'If the defendant "maintain[s] continuous and substantial

forum affiliations," then general jurisdiction exists. If the

defendant's contacts fall short of that standard, then at least

one contact must give rise or relate to the plaintiff's

claim.' " *Metcalfe*, 566 F.3d at 334 (quoting *O'Connor*, 496 F.3d

at 321 (quoting *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746

F.2d 208, 212 (3d Cir. 1984)) (citing *Grimes v. Vitalink

Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)) (alteration

original)).

**B. Rule 12(b)(6)**

In order to survive a motion to dismiss, a plaintiff must

offer "enough facts to state a claim to relief that is plausible

on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007). A court must ask whether the complaint "contain[s]

either direct or inferential allegations respecting all the

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 9

material elements necessary to sustain recovery under *some*

viable legal theory." *Twombly*, 550 U.S. at 562 (emphasis in

original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745

F.2d 1101, 1106 (7th Cir. 1984)).

"While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his

'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of a cause of action's

elements will not do." *Id.* at 555 (internal citations omitted).

Thus, "[t]o survive a motion to dismiss, a . . . plaintiff must

allege facts that 'raise a right to relief above the speculative

level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*,

499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at

555).

"Generally, a district court may not consider matters

outside the Complaint when ruling on a motion to dismiss."

*Cerome v. Moshannon Valley Corr. Center*, 2010 U.S. App. LEXIS

24938, at *9 (3d Cir. 2010). If matters outside of the pleadings

are presented to and not excluded by the court, the motion must

generally be treated as one for summary judgment under Rule 56.

*Id.* "However, 'an exception to the general rule is that a

document *integral to or explicitly relied upon* by the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (citation and internal quotation marks omitted); *see also In re Trump*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (internal citation and quotation marks omitted).

### III. <u>ANALYSIS</u>

### A. Personal Jurisdiction

In determining the standard to be applied to the instant motion, the Court notes that MORI has not filed an answer in this matter. The Court further notes that it has not held an evidentiary hearing on the question of personal jurisdiction in this case. As such, the Vanderwalls need only make a prima facie showing to permit this Court to exercise personal jurisdiction over MORI. *See Metcalfe*, 566 F.3d at 330. Thus, the Court is required to accept the factual allegations in the Vanderwalls' complaint as true. *See id*. The Court must construe all disputed facts in the Vanderwalls' favor. *See id*.

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 11

### i. <u>Virgin Islands Long-Arm Statute</u>

MORI asserts that the Court may not exercise personal jurisdiction over it because such jurisdiction is not authorized by the Virgin Islands Long-Arm Statute. In support of its motion to dismiss, MORI has provided the affidavit of its employee, Patricia Depalma ("Depalma"). In her affidavit, Depalma avers that MORI is a Delaware corporation with its principal place of business in Florida. Depalma further avers that at no relevant time did MORI: have any authority over MORI-STT; "conduct business in or have management authority over an entity conducting business in the U.S. Virgin Islands (the Territory)"; own any real or personal property in the Territory; maintain any bank account in the Territory; have any member or employee who was a resident of the Territory; appoint an agent for service of process in the Territory; pay taxes to the Territory; or "sue anyone in the Territory or avail itself of any aspect of the court system in the Territory." (Depalma Decl., ECF No. 11-1.)

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 f.2d 61, 63 (3d Cir. 1984)); *see also* Fed. R. Civ. P. 4(k)(1)(A). In the Virgin

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 12

Islands, establishing personal jurisdiction requires a "two-part analysis." *Metcalfe*, 566 F.3d at 330. "First, there must be a statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the Virgin Islands Long-Arm Statute, V.I. CODE ANN. tit. 5, § 4903." *Id.* "[S]econd, the nonresident defendant must have minimum contacts with the Virgin Islands sufficient to satisfy constitutional due process." *Id.* (citing *Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 267, 279 (Super. Ct. 2005) ("[T]he Court's *in personam* jurisdiction is limited first by the terms of the [long-arm] statute and then by the Due Process Clause of the Fourteenth Amendment of the Constitution.").

The Virgin Islands Long-Arm Statute provides, in pertinent part, that

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>
> (1) transacting any business in this territory;

V.I. CODE ANN. tit. 5, § 4903(a) ("Section 4903(a)").

To evaluate whether there is personal jurisdiction under the Virgin Islands Long-Arm Statute, the Court must "determine (1) whether the defendant's contacts meet one of the categories under section 4903(a) and then (2) whether the plaintiff's claim

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 13

'arises from' that contact." *Molloy v. Indep. Blue Cross*, 56
V.I. 155 (V.I. Supr. Ct. Jan 9, 2012).

"Under subsection (a)(1), the term 'transacting any
business' can be satisfied by only a single act which in fact
amounts to the transaction of business within the state or
territory." *Fin. Trust Co. v. Citigroup*, 268 F. Supp. 2d 561,
567 (D.V.I. 2003) (finding it sufficient under subsection (a)(1)
that the defendant entered into a contract with a Virgin Islands
resident and solicited the plaintiffs while they were in the
Virgin Islands). "[T]ransacting business is a term that connotes
activity that is less than doing business, but more than an
inconsequential act." *Manbodh Asbestos Litig.*, 47 V.I. at 283;
*see also Paradise Motors, Inc. v. Toyota de P.R., Corp.*, 314 F.
Supp. 2d 495, 498 & n.4 (D.V.I. 2004) (finding participation in
some business activity in the Virgin Islands coupled with the
receipt of substantial revenue from the activity sufficient to
establish the application of subsection (a)(1) of the long-arm
statute).

In *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d
Cir. 2009), Richard and Cynthia Metcalfe (collectively, the
"Metcalfes") residents of the Virgin Islands, purchased a boat
from Renaissance Marine, Inc. ("Renaissance"), a company based
in Florida. The Metcalfes claimed that Renaissance breached the

contract of sale, and brought suit in this Court. Renaissance sought to dismiss the action, claiming lack of personal jurisdiction. In response, the Metcalfes asserted that they "exchanged phone calls, faxes, and emails with Renaissance while they were in the Virgin Islands during the process of negotiating the sale of the [boat]." *Id.* at 332. The Third Circuit held that, "[b]ecause one single act can constitute 'transacting business,' surely repeated reciprocal communications between a buyer in the Virgin Islands and a seller located elsewhere which culminate in an agreement for sale of an item at a cost of nearly $85,000 also satisfies the standard under subsection (a)(1)." *Id.*

Here, the plaintiffs do not assert that MORI "transacted business" as it is described in *Metcalfe*. Specifically, they do not assert that MORI undertook any activities that resulted in revenue to MORI. Rather, the plaintiffs assert that personal jurisdiction over MORI is authorized by Section 4903(a)(1) of the Virgin Islands Long-Arm statute because, in 2001, MORI registered to do business in the Virgin Islands.

Although the plaintiffs were not required to rely on anything outside of their amended complaint for this pre-answer, pre-evidentiary hearing, facial challenge, they chose not to merely rest on their pleadings. In support of their assertion of

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 15

personal jurisdiction, the plaintiffs have provided a
Certificate to Conduct Business issued to MORI on March 16,
2001; a February, 2001, Consent of Agent for Service of Process
with the Virgin Islands Lieutenant Governor's office,
designating Prentice Hall Corporation System, Inc. as its
resident agent; and MORI's Annual Report, filed in June of 2012
with the Lieutenant Governor's Office. The plaintiffs advance
the argument that a foreign corporation's registration to do
business in the Virgin Islands is enough to satisfy the
"transacting business" requirement of Section 4903(a)(1).

The U.S. Court of Appeals for the Third Circuit has not
addressed that precise issue under Virgin Islands law. Further,
neither the Virgin Islands Supreme Court nor the Virgin Islands
Superior Court has addressed the issue. As such, it is the job
of this Court to predict how the Virgin Islands Supreme Court
would rule on this novel issue of territorial law. *See Edwards
v. HOVENSA, LLC*, 497 F.3d 355, 362 at n.3 (3d Cir. 2007) (". . .
the District Court, when exercising jurisdiction over cases
requiring the application of Virgin Islands law, will be
required to predict how the Supreme Court of the Virgin Islands
would decide an issue of territorial law . . . ").

The Virgin Islands Supreme Court recently had occasion to
explain the "transacting business" subsection of the long-arm

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 16

statute in *Molloy v. Blue Cross Blue Shield*, 56 V.I. 155 (V.I.
Supr. Ct. Jan 9, 2012). In that case, Gary and Christa Molloy
(collectively, the "Molloys"), residents of the Virgin Islands,
brought suit against Blue Cross Blue Shield Association
("BCBSA") in the Superior Court of the Virgin Islands. The
gravamen of the Molloys' seven-count complaint[2] was that BCBSA
was liable for failing to provide timely air evacuation services
when their infant son suffered complications caused by his
premature birth. Significantly, the Molloys had no relationship
with BCBSA. Rather, they had entered into a health-insurance
agreement with Blue Cross Blue Shield of the Virgin Islands
("BCBSVI"), an independent company that had licensed the "Blue
Cross Blue Shield" brand name from BCBSA. BCBSA moved to dismiss
the complaint against it for lack of personal jurisdiction. The
trial court granted the motion. The Molloys appealed.

On appeal, the Virgin Islands Supreme Court looked at each
relevant subsection of Section 4903(a) – subsections (1), (2),

---

[2] "Count I of the complaint alleged the appellees acted negligently and caused
D.M. physical harm, brain damage, mental anguish and pain and suffering.
Count II alleged that the appellees intentionally inflicted emotional harm on
the Molloys. Count III alleged negligent infliction of emotional harm on the
Molloys. In Count IV, both the Molloys and D.M. alleged a breach of the
insurance contract. And in Count V, both the Molloys and D.M. alleged bad
faith insurance practice. Count VI sought damages for false advertisement,
and Count VII sought punitive damages." *Molloy*, 2012 WL 78942 at *1. The
Molloy court explained that "Count I was a claim brought only by D.M., who is
not a party before this Court, and is thus not implicated in this appeal.
Count VII was a request for punitive damages, which is not an independent
cause of action." *Id.* at n.5.

and (4) – in determining whether the trial court properly
declined to exercise personal jurisdiction over BCBSA. Looking
first to Section 4903(a)(1), the *Molloy* court determined that
BCBSA had transacted business in the Virgin Islands.
Specifically, the court noted that BCBSA had lobbied Congress in
order to secure contracts for BCBSVI to provide insurance to
federal employees in the Virgin Islands. The court further noted
that BCBSA received substantial income from BCBSVI's licensing
fees, a portion of which were derived from revenue produced by
various insurance contracts with federal employees. The *Molloy*
court found that "[a]cting as an agent for an insurance company
in the Virgin Islands . . . with the specific purpose of
garnering contracts to cover Virgin Islands citizens qualifies
as more than an inconsequential act, and indicates BCBSA's
intent to transact business within the Virgin Islands." *Id.* at
176.

        After determining that BCBSA had indeed transacted business
in the Virgin Islands pursuant to Section 4903(a)(1), the *Molloy*
court addressed the issue of whether the claims against BCBSA
arose from BCBSA's transaction of business in the Territory.
Specifically, the *Molloy* court explained that the "Third
Circuit's procedure under this standard is to determine whether
the contact is the 'but for' cause of the action, and, if so,

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 18

then to determine if the contact's substantive obligations and privileges are closely related to the cause of action." *Molloy*, 2012 WL 78942 at *8 (citing *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 322-25 (3d Cir. 2007)). "A 'but-for' cause is a 'cause without which the event could not have occurred.'" *Molloy*, 2012 WL 78942 at *9 (citing Black's Law Dictionary 250 (9th ed. 2009)).

In undertaking that analysis, the Virgin Islands Supreme Court observed that the Molloys "failed to explain how any of their claims arise from these business transactions." *Molloy*, 2012 WL 78942 at *9. That court determined that, although BCBSA's contacts with the Territory indicated an intent to transact business therein, the plaintiffs' claims did not "arise from" those contacts. This was so because BCBSA's contacts were not a "but-for" cause of the Molloys' claims. Indeed, the Molloys could very well have sustained the same injuries if BCBSA had engaged in no lobbying on behalf of BCBSVI or received no revenue from its licensing arrangement. "Simply put, the Molloys provided the Superior Court with no link between the business BCBSA transacted within the Virgin Islands and the damages they allegedly suffered when BCBSVI was dilatory in providing air ambulance services to D.M. or through the advertisements BCBSA approved." *Id*. As such, the *Molloy* court

found that, as to all counts then before it, "the Superior Court correctly determined that the Molloys failed to make out a prima facie case for personal jurisdiction over BCBSA *through 4903(a)(1).*" *Id.* (emphasis added).

The Virgin Islands Supreme Court then assessed whether personal jurisdiction could be asserted with respect to Section 4903(a)(2) and (4). As to Counts II through V, the court determined that personal jurisdiction under subsections (2) and (4) was not proper because the Molloys failed to satisfy the "but for" test. Therefore, the *Molloy* court affirmed the trial court's dismissal of those counts for lack of personal jurisdiction.

As to Count VI, the court determined that the Molloys had made out a prima facie case. Specifically, the *Molloy* court explained that BCBSA had contracted to supply services or things in the Virgin Islands. BCBSA had also caused injury in the Virgin Islands by an act outside of the Virgin Islands. Further, the Court determined that the allegations in Count VI arose from BCBSA's Virgin Islands contracts and harmful conduct. As such, that court reversed the trial court's dismissal for lack of personal jurisdiction as to Count VI.

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 20

Here, the plaintiffs assert that MORI transacted business in the Virgin Islands when it filed an Annual Report[3] in June of 2012 with the Lieutenant Governor's Office, pursuant to V.I. Code Ann. tit. 13, § 401 ("Section 401").[4] Section 401 sets forth the qualifications and requirements for a foreign corporation to do business in the Virgin Islands. The plaintiffs argue that Section 401 contemplates that a foreign corporation registered to do business in the Virgin Islands waives any objection to personal jurisdiction in the Territory. That assertion is flawed.

Section 401(a) provides that a foreign corporation planning to do business in the U.S. Virgin Islands must file with the Office of the Lieutenant Governor a certificate "stating the name of its authorized agent in the Virgin Islands upon whom

_____

[3] That report indicates that none of MORI's capital was used in conducting business within the Virgin Islands during the 2011-12 fiscal year. (ECF No. 15-3.)

[4] MORI filed its annual report pursuant to V.I. Code Ann. tit. 13, § 401 which provides, in pertinent part, that

> No corporation created by the laws of any foreign country or any state of the United States, or the laws of the United States, shall do any business in the United States Virgin Islands through or by branch offices, agents or representatives located in the United States Virgin Islands until it shall have filed in the office of the Lieutenant Governor . . . *stating the name of its authorized agent in the United States Virgin Islands upon whom service of legal process against it may be made, and a sworn statement of the assets, liabilities and capital stock (both authorized and paid up) of the corporation at the close of its last fiscal year.* . . .

V.I. Code Ann. tit. 13, § 401 (a) (emphasis added).

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 21

service of legal process against it may be made. . . ." While it is true that to do business in the Virgin Islands a corporation must register and provide certain information, the converse is not true. That is, Section 401 neither presumes nor requires a registered foreign corporation to actually do business in the Virgin Islands simply because the corporation has completed the registration process. Thus, *registration* alone does not necessarily rise to the level of *doing* business in the Territory for long-arm statute purposes.

Even if Section 401 registration amounts to the transaction of business in the Territory, such a transaction, standing alone, would still not be enough to satisfy the Long-Arm Statute. Indeed, the personal jurisdiction analysis requires further inquiry. As explained in *Molloy*, once a court determines that a defendant has transacted business in the Territory, the court must analyze whether the claims against the defendant arise from such transaction. *Id*. at *8, *9. That is, the court must determine whether the transaction is the "but for" cause of the claims. *Id*.

Here, the plaintiffs assert claims for negligence/failure to provide adequate security; negligent hiring, retention, and supervision; breach of warranty; negligent misrepresentation; misrepresentation; and conversion. All of the plaintiffs' claims

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 22

arise from the alleged actions of Percival in removing the

plaintiffs' ring from their in-room safe. Thus, in order to

satisfy the Long-Arm Statute, MORI's purported transactions

within the Territory must have been the "but for" cause of the

plaintiffs' loss as occasioned by Percival's actions. *See*

*Molloy*, 2012 WL 78942 at *8.

     The allegations in the plaintiffs' complaint are based upon

the alleged failure of the MORI to provide adequate security at

the Marriott Frenchman's Cove; MORI's alleged failure to

properly hire, retain, and supervise its employees at the

Marriott Frenchman's Cove; and respondeat superior liability

arising from the actions of MORI's purported employees. Even

accepting those allegations as true, as required under the prima

facie standard of review, MORI's putative contacts with the

Territory merely indicate an *intent* to transact business in the

Virgin Islands. As explained by the *Molloy* court, such an

intent, standing alone, is not sufficient to satisfy the "but

for" test. *See id*. at *9. Significantly, the plaintiffs' claims

do not "arise from" those contacts. Indeed, the plaintiffs could

very well have sustained the same injuries if MORI had not

registered to do business in St. Thomas in 2001. Further, the

plaintiffs could have sustained the same injuries had MORI not

filed an annual report with the Office of the Lieutenant

Governor in 2012. Simply put, the plaintiffs have provided no link in their amended complaint between the business MORI purportedly transacted within the Virgin Islands and the damages they suffered when Percival allegedly removed the plaintiffs' ring from their in-room safe. As such, accepting all facts in the amended complaint as true, and construing all factual disputes in the plaintiffs' favor, the Court finds that MORI's contacts were not the "but for" cause of the plaintiffs' claims.

Based on the foregoing, the Court finds that the plaintiffs have failed to establish a prima facie case for personal jurisdiction over MORI. *See Molloy*, 56 V.I. 155. Because the Court finds that the plaintiffs have failed to sustain their burden as to the long-arm statute, the Court need not undertake the due process analysis. *Cf. Metcalfe*, 566 F.3d at 334 (undertaking the due process analysis only after the court determined that the plaintiffs had satisfied long-arm statute considerations).

**B. Failure to State a Claim**

The Marriott defendants jointly move to dismiss all counts against them for failure to state a claim. Because the Court has determined that it may not exercise personal jurisdiction over MORI, this motion will only be considered as to MORI-STT.

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 24

"To determine the sufficiency of a complaint . . . a court must take three steps: First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' . . . . Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth' . . . . Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 881 (2009)).

### i.   *Count One: Negligence – Failure to Provide Adequate Security*

To state a claim for negligence in the Virgin Islands, a plaintiff must allege (1) a duty; (2) a breach of that duty; (3) causation; and (4) damages. *Matos v. Nextran, Inc.*, 2009 WL 2477516, at *5 (D.V.I. Aug. 10, 2009) (citations omitted); *see also* Restatement (Second) of Torts § 281 (1965) (stating the elements of negligence).

In support of their claim for negligence against MORI-STT, the Vanderwalls aver in Count One that MORI-STT owed them a duty of care. (Am. Compl. ¶¶ 35-36, ECF No. 2). The plaintiffs concede that generally, there is no duty to protect others from the criminal activities of third persons. (Pls.' Opp'n to Mot.

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 25

to Dismiss 4, ECF No. 16.) The plaintiffs argue, however, that

"when a duty to protect others against such criminal misconduct

has been assumed, liability may be created by a negligent breach

of that duty." (*Id.*)

In explaining the elements required to assert a negligence

claim, the Restatement (Third) of Torts provides that

> An actor who undertakes to render services to another
> and who knows or should know that the services will
> reduce the risk of physical harm to the other has a
> duty of reasonable care to the other in conducting the
> undertaking if:
>
> (a) the failure to exercise such care increases the
> risk of harm beyond that which existed without the
> undertaking, or
>
> (b) the person to whom the services are rendered or
> another relies on the actor's exercising reasonable
> care in the undertaking.

Restatement (Third) of Torts: Phys. & Emot. Harm § 42 (2012).

Comment b of that section states that

> An actor who engages in an undertaking is subject to
> the ordinary duty of reasonable care provided in § 7
> for risks created by the undertaking. In that case, no
> inquiry into affirmative duties is necessary. This
> Section, by contrast, addresses an actor's liability
> for harm arising from other risks when the actor
> undertakes to eliminate or ameliorate those risks.

Restatement (Third) of Torts, § 42 cmt. c. Pursuant to

Restatement (Third) of Torts § 4, "'[p]hysical harm' means the

physical impairment of the human body ('bodily harm') or of real

property or tangible personal property ('property damage')." *See*

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 26

*also* Restatement (Third) of Torts § 4 cmt. a (explaining that

"'[p]roperty damage' is [the] impairment of tangible personal

property or real property.").

Here, the plaintiffs have pleaded that MORI-STT employed

Percival as a loss prevention officer at Marriott Frenchman's

Cove (Am. Compl. ¶ 27.) As an officer, Percival was given a

security key that could override access codes and unlock all

room safes. (*Id.* at ¶ 28.)

Even if MORI-STT did not initially owe any duty to the

Vanderwalls, it is plausible to infer that once MORI-STT hired a

loss prevention officer, it voluntarily undertook the duty of

protecting its patrons from criminal activity and more

specifically, theft. *See, e.g., Harris v. Pizza Hut, Inc.*, 455

So. 2d 1364, 1371 (La. 1984) (holding that the restaurant had a

duty, once it hired security guard, to have the guard protect

patrons from criminal activities of third persons in a

reasonable and prudent manner); *Mullins v. Pine Manor Coll.*, 449

N.E. 2d 331 (Mass. 1983) (holding when the college voluntarily

undertook a duty to protect its students from criminal acts of

third parties, the college was required to perform that duty

with due care); *Cross v. Wells Fargo Alarm Servs.*, 412 N.E. 2d

472 (Ill. 1980) (housing authority that hired security agency to

patrol for 16 hours per day, ending at 1:00 a.m., undertook a

duty that included the risk of an attack after 1:00 a.m.).

Thereafter, knowing that MORI-STT had enacted measures to ensure

the safety of its patrons, it is plausible that the Vanderwalls

might have reasonably relied on MORI-STT to prevent the loss of

their personal items. As such, the Court finds that the

plaintiffs have sufficiently pleaded that MORI-STT owed them a

duty of care.

In support of the "breach" element, the Vanderwalls allege

that

> 34. The Marriott Defendants breached their duty of
> care by failing to take reasonable steps to ensure
> Plaintiffs' safety or to prevent Plaintiffs from being
> exposed to criminal activity during their stay at the
> Timeshare Unit.
>
> 35. The Marriott Defendants breached their duty of
> care owed to the Plaintiffs because they had reason to
> know of other criminal activity involving theft on its
> premises. . . .
>
> 36. Plaintiffs are informed and believe, and thereon
> allege, that the Marriott Defendants had reasonable
> cause to anticipate criminal acts and probability of
> loss arising from them. The Marriott Defendants and
> each of them, failed to take affirmative steps to
> control the wrongful conduct.

(Am. Compl. ¶¶ 34-36.) The Vanderwalls, however, do not allege

facts supporting their bare assertion that MORI-STT failed "to

take reasonable steps" to ensure their safety. They do not

allege facts supporting their bare assertion that MORI-STT "had

reasonable cause to anticipate criminal acts." The above-quoted

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 28

portions of paragraphs 34 through 36 are conclusory statements

and formulaic recitations of an element of a negligence claim.

As such, the statements are not entitled to the assumption oif

truth. *See generally*, *Fowler v. UPMC Shadyside*, 578 F.3d 203,

206 (3d Cir. 2009) (stating that a court "must accept all of the

complaint's well-pleaded facts as true, but may disregard any

legal conclusions.").

The Vanderwalls offer no additional allegations in support

of their assertion that MORI-STT breach a purported duty to

provide adequate security. Further, the Court cannot infer from

any of the allegations in the complaint that MORI-STT breached a

duty to provide adequate security. Because the Vanderwalls have

failed to adequately plead an essential element, they fail to

state a claim for negligence.

### ii. *Count Two: Negligent Hiring, Retention, and Supervision*

The Restatement (Third) of Agency recognizes the tort of

negligent hiring, retention, and supervision. It provides, in

pertinent part:

> (1) A principal who conducts an activity through an
> agent is subject to liability for harm to a third
> party caused by the agent's conduct if the harm was
> caused by *the principal's* negligence in selecting,
> training, retaining, supervising, or otherwise
> controlling the agent.

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 29

Restatement (Third) of Agency § 7.05(1) (emphasis added).

Section 213 of the Restatement (Second) of Agency provides, in

pertinent part:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from *his* conduct if *he* is negligent or reckless:
>
> (a) in giving improper or ambiguous orders or in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (emphasis added). "The type

of supervision required by the principal's duty of reasonable

care, like its relative degree of intensity, are functions of

the risk posed to third parties and the burdens imposed by

precautions that the principal may take in reference to the

risk." Restatement (Third) of Agency § 7.05, ill. 8.

The elements of a negligent hiring, retention, or

supervision claim are: "(1) the existence of an employment

relationship; (2) the employee's incompetence; (3) the

employer's actual or constructive knowledge of such

incompetence; (4) the employee's act or omission causing

plaintiff's injuries; and (5) the employer's negligence in

hiring or retaining the employee was the proximate cause of the

plaintiff's injuries." *Mala v. Marine Serv. Mgmt.*, Civil No.

2006-120, 2009 WL 2170071 (D.V.I. July 20, 2009) (citing *Watson*

*v. City of Cleveland*, 202 Fed. App'x 844, 857 (6th Cir. 2006)

(unpublished) (discussing the elements under Ohio law)).

The following allegations, inter alia, in the plaintiffs'

amended complaint are conclusory and thus not entitled to the

assumption of truth:

> 41. If the Marriott Defendants had properly screened
> Defendant Percival and adequately investigated his
> background, they would have determined that Defendant
> Percival was unfit and unqualified to work for the
> Marriott Frenchman's Cove.
>
> . . . .
>
> 43. The Marriott Defendants had the responsibility and
> duty to adequately and properly supervise their
> employees including Defendant Percival. Said
> Defendants knew or should have known that Defendant
> Percival was an unfit employee whose unfitness created
> a particular risk of harm to Marriott's patrons.

(Am. Compl. ¶¶ 41, 43.)

The plaintiffs do not allege any specific facts as to

Percival's purported lack of fitness or qualification. They do

not allege any specific facts as to MORI-STT's hiring,

retention, or supervisory failures or how such purported

failures tie into whether or not Percival should have been

permitted to assist owners with problems with their safes. There

is no factual allegation that points to some conduct that might possibly have given MORI-STT actual or constructive knowledge that Percival would steal from the plaintiffs. Further, there is no factual allegation which even gives rise to MORI-STT's knowledge that Percival might succumb to criminal opportunity while assisting a timeshare owner with the owner's safe. Indeed, the plaintiffs fail to allege any facts supporting the "incompetence" and "knowledge" elements required for the asserted theories of liability. As such, the plaintiffs fail to state a claim for negligent hiring, retention, and supervision.

### iii. Count Three: Respondeat Superior

To state a "claim under a respondeat superior theory, a plaintiff must allege that (1) the employee's tort encompasses the type of action the employee was hired to perform, (2) the employee's tort occurs within prescribed limits of time and space, and (3) the employee's tort purposefully serves the employer." *Warrington v. Camacho*, Civil No. 2006-235, 2007 WL 3124674, at *2 (D.V.I. Oct. 22, 2007) (internal citations omitted).

Indeed, "[a]n employer is subject to liability for torts committed by employees while acting *within* the scope of their employment." Restatement (Third) Of Agency § 2.04 (2006)

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 32

(emphasis added). In explaining the term "scope of employment,"

the Restatement (Third) of Agency states that

> (2) An employee acts within the scope of employment
> when performing work assigned by the employer or
> engaging in a course of conduct subject to the
> employer's control. *An employee's act is not within
> the scope of employment when it occurs within an
> independent course of conduct not intended by the
> employee to serve any purpose of the employer.*

Restatement (Third) of Agency § 7.07(2). "If an employee

undertakes a course of work-related conduct for the sole purpose

of furthering the employee's interests or those of a third

party, the employee's conduct will often lie beyond the

employer's effective control." *Id.* at § 7.07 cmt b.

Here, the plaintiffs allege that Percival was employed by

MORI-STT as a loss prevention officer when he converted their

personal property. (Am. Compl. ¶ 51.) They allege that Percival

was on duty at the time of the purported conversion. (*Id.* at ¶

52.) They allege that just before the conversion, Percival was

engaged in a duty of his employment when he repaired their safe.

(*Id.* at ¶¶ 15-16.)

The plaintiffs, however, fail to allege any facts

supporting the "purposeful" element. The plaintiffs do not

allege that Percival's conversion purposefully served MORI-STT

in any way. Specifically, they do not allege that Percival

intended that his conversion benefit MORI-STT financially or

otherwise. *Compare Quick v. Peoples Bank*, 993 F.2d 793, 798

(11th Cir. 1993) (finding the doctrine of respondeat superior

applicable in civil RICO suit where the bank's officer acted in

furtherance of bank's business in making fraudulent loans);

*Adams v. Hyannis Harborview, Inc.*, 838 F. Supp. 676, 692 (D.

Mass. 1993), *aff'd*, 73 F.3d 1164 (1st Cir. 1996) (finding that a

bank director acted within the scope of employment in selling

unregistered securities to plaintiffs where the director

intended to produce some benefit to a bank which made loans to

purchasers); *with In re Ivan F. Boesky Sec. Litig.*, 36 F.3d 255,

265 (2d Cir. 1994) (finding that a bank's vice president "sold

nonpublic information to line his own pockets in violation of

every fiduciary duty he owed to Goldman as its employee. None of

his actions furthered Goldman's interests."); *Matter of Am.

Biomaterials Corp.*, 954 F.2d 919 (3d Cir. 1992) (determining

that the corporation was not vicariously responsible for

penalties resulting from a failure to fulfill its duties under

the tax code which were caused by criminal acts of embezzlement

against the corporation by its corporate officers). Rather, the

plaintiffs' allegations seem to be at odds with the "purposeful"

element. They allege that a loss *prevention* officer, acting

within the scope of his employment, *brought about* their loss.

That allegation is speculative at best and the plaintiffs offer

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 34

no specific factual allegations in support of their assertion.

Indeed, they fail to allege facts that "raise a right to relief

above the speculative level on the assumption that the

allegations in the complaint are true." *See Twombly*, 550 U.S. at

555. As such, the plaintiffs fail to state a respondeat superior

claim.

### iv.   Count Four: Breach of Warranty

In Count Four the plaintiffs allege that MORI-STT breached

its implied warranty. Implied warranties arise by operation of

law. *See generally Altronics of Bethlehem, Inc. v. Repco, Inc.*,

957 F.2d 1102, 1104 (3d Cir. 1992). Implied warranties which

arise under Virgin Islands law include the implied warranty of

fitness for a particular purpose, V.I. Code Ann. tit. 11a, § 2-

315; the implied warranty of merchantability, V.I. Code Ann.

tit. 11a, § 2-314; the implied warranty of good workmanship,

Restatement (Second) of Property §§ 12.2, 19.1; Restatement

(Third) of Property (Servitudes) § 6.20; and the implied

warranty of habitability, Restatement (Second) of Property §§

5.1-5.6, 17.6.

The implied warranties of merchantability and fitness are

specific to transactions involving the sale of goods. *See* V.I.

Code ann. tit. 11a, §§ 2-314, 2-315. The implied warranty of

good workmanship is applied in cases involving construction or

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 35

repair. *See* Restatement (Second) of Property §§ 12.2, 19.1;

Restatement (Third) of Property (Servitudes) § 6.20. The implied

warranty of habitability applies to leased real property. *See*

Restatement (Second) of Property §§ 5.1-5.6, 17.6.

Here, the plaintiffs do not specify which implied warranty

MORI-STT breached. The plaintiffs simply allege:

> 56. The Marriott Defendants have held themselves to
> the general public as being able to provide a safe and
> secure environment for all of their patrons.
>
> 57. The Marriott website includes an article entitled
> "Safety and Security is Everyone's Business," which
> includes a profile of its Senior Director for Loss
> Prevention and promotes the safety and security at
> Marriott.
>
> 58. Pursuant to its representations to the general
> public, including Plaintiffs, the Marriott Defendants
> implicitly warranted that it would provide a safe and
> secure environment for Plaintiffs during their stay at
> the Timeshare Unit.
>
> 59. The Marriott Defendants breached its implied
> warranty by failing to provide a safe and secure
> environment for Plaintiffs.

(Am. Compl. ¶¶56-59.) The plaintiffs' amended complaint does not

assert a breach of any warranty recognized under Virgin Islands

law. Indeed, the plaintiffs' allegations do not involve the sale

of goods. The allegations do not involve the quality of any

construction or repair. Further, the allegations do not involve

any leased premises.

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 36

Even if Virgin Islands law recognized an implied warranty to "provide a safe and secure environment" as alleged in the amended complaint, there is no indication in the complaint as to how that presumed warranty arose, or how MORI-STT breached it. Significantly, the plaintiffs' have pleaded nothing more than conclusory allegations that MORI-STT "breached its implied warranty." Such generic allegations do meet the requirements articulated by *Twombly* and *Iqbal*.[5]

------

[5] The plaintiffs assert in their opposition to the motion to dismiss that Count Four states a claim for breach of the implied warranty of habitability. The implied warranty of habitability is generally applicable in landlord-tenant cases and in cases involving the sale of new homes. *See* Restatement (Second) of Property §§ 5.1-5.6, 17.6. Under the implied warranty of habitability, a landlord must keep the premises in a "safe and sanitary condition," *see Hagglund v. American Motors Inn*, 18 V.I. 376, 378 (D.V.I. 1981), and fit for habitation. *See Allen v. Housing Auth. of the County of Chester*, 683 F.2d 75, 78 (3d Cir. 1982). "Many state courts have defined the implied warranty of habitability as meaning 'there are no latent defects in the facilities [v]ital to the use of the premises for residential purposes and that these [e]ssential facilities will remain during the entire term in a condition which makes the property livable.'" *Allaire v. U.S. Trust Co. of New York*, 478 F. Supp. 826, 828 (D.V.I. 1979) (citing *Kline v. Burns*, 111 N.H. 87, 276 A. 2d 248, 252 (1971) (emphasis added); *Marini v. Ireland*, 56 N.J. 130, 265 A. 2d 526, 534 (1970); *Kamarath v. Bennett*, 568 S.W.2d 658, 661 (Tex. 1978)). Here, there are no allegations that MORI-STT's provision of security personnel was vital to the plaintiffs' use of their timeshare unit for residential purposes. As such, the plaintiffs have not adequately alleged breach of any implied warranty of habitability that may have arisen. *See Allaire*, 478 F. Supp. at 828 ("Because the porch itself is not vital to the use of the home for residential purposes, the alleged defect in the porch, the opening, did not violate the implied warranty of habitability."). Further, the plaintiffs would necessarily have had to assert that cause of action in their *pleadings*. *See generally Holland v. Simon Property Group, Inc.*, 495 Fed. App'x 270, 273-74 (3d Cir. 2012) (explaining that plaintiffs may not assert new theories of liability for the first time in an opposition brief). To the extent that the plaintiffs seek to inject their first amended complaint with a new cause of action, they must do so via a proper motion to amend. *See id.*

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 37

        *v.    Count Five: Negligent Misrepresentation*

     The Restatement (Second) of Torts § 552 provides that
liability exists for negligent misrepresentation where: (1) the
defendant, in the course of his business or in a transaction in
which he has a pecuniary interest, supplied false information
with respect to that transaction or business; (2) the plaintiff
justifiably relied on the false information in making a business
decision; (3) the plaintiff suffered pecuniary loss as a result
of their justifiable reliance upon the defendant's false
information; and (4) the defendant was negligent in failing to
exercise the reasonable care necessary in providing the
information, that is, he either knew or should have known the
truth or falsity of his representation.

     Negligent misrepresentation "requires an *express*
representation which is false or misleading at the time it is
made." *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp.
2d 545, 568 (D.V.I. 2004) (quoting *L.E.B. Enters., Inc. v.
Barclays Bank, P.L.C.*, 33 V.I. 42, 46 (Terr. Ct. 1995) (emphasis
in original)). That is, an "alleged misrepresentation must be
factual in nature and not promissory or relating to future
events that might never come to fruition." *Hydro Investors, Inc.
v. Trafalgar Power, Inc.*, 227 F.3d 8, 20–21 (2d Cir. 2000)
(citations omitted). This requirement is rooted in the principle

that "[i]t is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions." *City of St. Joseph v. Southwestern Bell Tel.*, 439 F.3d 468, 478 (8th Cir. 2006) (quotation marks and citation omitted). As the U.S. Court of Appeals for the Tenth Circuit has explained:

> This is not some obscure technical rule. It is a natural consequence of the meanings of the terms negligent and misrepresentation. A misrepresentation conveys "false information[ ]"; that is, it must be a false statement of fact. But a promise in itself contains no assertion of fact other than the implied representation that the speaker intends to perform the promise. The misrepresentation must therefore be that the promissor is falsely declaring that he has the intent to perform. If the promissor intends not to perform, however, the misrepresentation (that the promissor intends to perform) is not negligent; it is, rather, knowing and intentional[.]

*Alpine Bank v. Hubbell*, 2008 U.S. App. LEXIS 26944, at *21-22, 2008 WL 5413133 (10th Cir. Dec. 31, 2008) (internal citations omitted). Thus, "if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of material existing fact...." *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (quotation marks and citation omitted).

In support of their negligent misrepresentation claim, the plaintiffs allege that

> 62. In order to induce the Plaintiffs to purchase the Timeshare Unit, the Marriott Defendants expressly or implicitly represented that they would provide a safe environment at the Marriott Frenchman's Cove.

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 39

    63. The Marriott Defendants made those representations negligently, with the intent that the Plaintiffs would rely upon them.

    64. Plaintiffs did indeed rely on these false statements, resulting in damages to Plaintiffs, including the right to use and quiet enjoyment of their Timeshare Unit.

(Am. Compl. ¶¶ 62-64.)

    Crucially missing from Count Five is any allegation that MORI-STT made a representation of fact that was false at the time it was made. Indeed, the plaintiffs have not alleged any specific facts in support of the "knowledge" element. There are no facts alleged as to how or whether MORI-STT either knew or should have known the truth or falsity of its representation. Just as the Court explained in its analysis of Count Two, there is no factual allegation that points to any conduct that might possibly have given MORI-STT actual or constructive knowledge that Percival would steal from the plaintiffs. Further, there is no allegation that MORI-STT purposefully set out to deceive the plaintiffs. At most, the plaintiffs have alleged that the plaintiffs failed to fulfill their promise to provide a safe environment. Significantly, such an allegation is inadequate to sustain a negligent misrepresentation claim. *See Addie v. Kjaer*, Civil No. 2004-135, 51 V.I. 507, 2009 WL 453352, at *3 (D.V.I. Feb. 23, 2009) (explaining generally that the extension of negligent misrepresentation to situations involving future

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 40

intentions would endow every breach of contract with a potential
tort claim for negligent misrepresentation).

###### vi.  *Count Six: Misrepresentation*

According to the Restatement (Second) of Torts § 552C, the
elements required to allege misrepresentation are (1) the
defendant was involved in a sale, rental or exchange transaction
with the plaintiff; (2) in furtherance of such transaction, the
defendant misrepresented a material fact; (3) the defendant made
that communicated that material fact for the purpose of inducing
the plaintiff to act or refrain from acting in reliance upon it;
(4) the plaintiff acted in justifiable reliance upon the
misrepresentation; and (5) as a result of its reliance, the
plaintiff suffered pecuniary loss.

The only material difference between a claim for negligent
misrepresentation and one for non-negligent misrepresentation is
that non-negligent misrepresentation does not include a
"knowledge" element. *See* Restatement (Second) of Torts § 552C.
As explained in the negligent misrepresentation analysis above,
the plaintiffs have failed to allege any specific, material
factual misrepresentation. Further, the plaintiffs have not
alleged that any such material statement was false when it was
made. Rather, the plaintiffs have only made the vague assertion
that MORI-STT "expressly or implicitly represented that they

would provide a safe environment." (Am. Compl. ¶ 62.) Such a

conclusory statement is not entitled to the assumption of truth.

*See generally Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d

Cir. 2010). As such, the plaintiffs have failed to state a claim

for misrepresentation.

Regarding Counts One through Six, it is well-settled that,

when counts in a complaint are "dismissable for lack of factual

specificity," a plaintiff nonetheless "should be given a

reasonable opportunity to cure the defect, if he can, by

amendment of the complaint . . . ." *Shane v. Fauver*, 213 F.3d

113, 116 (3d Cir. 2000) (quoting *Darr v. Wolfe*, 767 F.2d 79, 81

(3d Cir. 1985)). The Court must grant leave to amend the

complaint regardless of whether the plaintiff has requested it.

*See District Council 48 v. Bradley*, 795 F.2d 310, 316 (3d Cir.

1986).

Indeed, the Court may only refuse to grant a plaintiff

leave to amend a dismissable complaint only on the grounds of

"undue delay, dilatory motive, prejudice, and futility." *In re

Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d

Cir. 1997); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14

(3d Cir. 1993). "Futility" in this context "means that the

complaint, as amended, would fail to state a claim upon which

*Vanderwall, et al. v. Marriott Ownership Resorts (St. Thomas), Inc., et al.*
Civil No. 2012-84
Memorandum Opinion
Page 42

relief could be granted." *Shane*, 213 F.3d at 115 (citing

*Burlington*, 114 F.3d at 1434).

MORI-STT has adduced no reason for the Court to believe

that permitting the Vanderwalls to amend their complaint would

be inequitable or futile. Significantly, MORI-STT does not

suggest that the Vanderwalls' claims are barred as a matter of

law, but rather that they have failed to allege essential facts

with the appropriate specificity. *See Darr v. Wolfe*, 767 F.2d

79, 81 (3d Cir. 1985) (holding that a curative amendment should

be allowed when the complaint is dismissable due to its lack of

factual specificity). Accordingly, the Vanderwalls will be given

leave to amend their complaint.

### vii. Count Seven: Conversion

Count Seven asserts a conversion claim against Percival.

There are no allegations in that count asserted against MORI-

STT. Because there is no claim asserted against MORI-STT in that

count, its motion to dismiss Count Seven will be denied.

An appropriate order follows.

S_____
        Curtis V. Gómez
        District Judge